T.C. Memo. 2015-31

UNITED STATES TAX COURT

PARESH M. SHAH AND RITA P. SHAH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

K. DIPAL ENTERPRISES, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19071-12, 19072-12.        Filed February 25, 2015.

Paresh M. Shah and Rita P. Shah, pro sese.

Paresh M. Shah (an officer), for K. Dipal Enterprises, Inc.

Alissa L. VanderKooi and Alicia A. Mazurek, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  Petitioner Paresh M. Shah engaged in various activities for

which he neither sought nor derived any revenue, yet he and his wife, Dr. Rita P.

**[\*2]** Shah, claimed deductions for expenses that they attributed to those activities. Mr. Shah also operated K. Dipal Enterprises, Inc. (K. Dipal), a computer consulting business. The Internal Revenue Service (IRS) disallowed some of the expenses that the Shahs deducted personally or through K. Dipal because those expenses were wholly personal or because neither the Shahs nor K. Dipal could substantiate them. The IRS also determined that K. Dipal did not report all of its income. Because taxpayers generally cannot deduct personal expenses,[1] and because the Shahs and K. Dipal failed to substantiate expenses beyond those respondent allowed, we sustain respondent's determinations. We also sustain respondent's determinations of K. Dipal's unreported income and the imposition of accuracy-related penalties.

## FINDINGS OF FACT

Mr. Shah and Dr. Shah were married during 2009 and 2010 and filed joint Federal income tax returns for those years.

---

[1]Sec. 262(a). Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[*3]** I.  Dr. Shah's Activities

Dr. Shah works as an internist at Michigan Physicians Group.  Mr. Shah's brother and sister are also doctors at Michigan Physicians Group.  During 2009 and 2010 this group had at least seven physicians and five office locations.

II.  Mr. Shah's Activities

Mr. Shah participates in various activities, both individually and through an entity, K. Dipal, including information technology (IT), consulting, financial management, and real estate.  Mr. Shah has a bachelor's degree in chemical engineering and a master's degree in computer science.

A.  IT Business Operated Through K. Dipal

Mr. Shah operates an IT and computer consulting business and reported this both personally on a Schedule C, Profit or Loss From Business, and through a corporate entity, K. Dipal.  K. Dipal has only one client, Michigan Physicians Group.  Although K. Dipal does not have a contract, it was the sole IT service provider for Michigan Physicians Group for 2009 and 2010.  K. Dipal maintained Michigan Physicians Group's computer servers, Web site, electronic medical records, database, computers, printers, software, phones, and other electronic office equipment for more than 10 years.  Mr. Shah was also involved in management, database design, data analysis, and system design.  Michigan

**[\*4]** Physicians Group paid K. Dipal $12,000 per month for these services. Mr. Shah was K. Dipal's only employee; however, his high-school-age daughter occasionally helped. In addition, K. Dipal paid for the services of one independent contractor who helped maintain the equipment, which was owned by Michigan Physicians Group.

K. Dipal filed Forms 1120, U.S. Corporation Income Tax Return, for 2009 and 2010.

B.     Other IT and Computer Consulting Activities

In addition to performing IT services through K. Dipal, Mr. Shah did IT work and computer consulting for Michigan Physicians Group and some of his family members remotely from his home. Although Mr. Shah testified that he had been trying to get IT clients other than Michigan Physicians Group and his family members for at least 10 years, he did not have any other clients. And he neither sought nor received compensation for the IT services he performed from his home in his individual capacity.

The Shahs reported all of the expenses related to the IT and computer consulting activities that Mr. Shah performed from home on Schedules C of their personal returns instead of on K. Dipal's corporate returns for the years in issue.

**[*5]** They also deducted other related expenses because K. Dipal did not reimburse Mr. Shah for what he personally spent to support the business.

    C.    <u>Financial Management and Investment Consulting Activities</u>

For more than 10 years Mr. Shah managed investment portfolios for his brother and his brother's two children. He also acted as an investment consultant to his family members and Michigan Physicians Group on their various investments. Mr. Shah is not a licensed broker and does not have any clients except for his family members and Michigan Physicians Group. He has neither sought nor received compensation for these activities.

The Shahs reported expenses for these activities for each of the years in issue on their Schedule C.

    D.    <u>Rental Property</u>

The Shahs owned a rental property on Woodward Avenue in Bloomfield Hills, Michigan. The Woodward Avenue property produced rental income during the years in issue, and the Shahs reported the expenses associated with this property on their personal return.

III.    <u>Family and Business Expenses Reported on the Shahs' Individual Returns</u>

For 2009 and 2010 Mr. Shah prepared the Shahs' Forms 1040, U.S. Individual Income Tax Return, and K. Dipal's Forms 1120.

**[*6]** A.    <u>Unreimbursed Employee Expenses</u>

The Shahs claimed deductions for unreimbursed employee expenses on their Schedule A, Itemized Deductions, of $13,535 for 2010, and attached the corresponding Form 2106, Employee Business Expenses. The Shahs reported the following expenses on their Form 2106: vehicle, travel, meals and entertainment, and various other business expenses. Dr. Shah testified that these expenses were for her continuing medical education, but no one recalled her ever seeking reimbursement from Michigan Physicians Group. The Shahs did not provide any substantiation for these expenses to the Court.

B.    <u>IT, Financial Management, and Consulting Activities</u>

The Shahs reported the principal business activity on their Schedules C for 2009 and 2010 as "FINANCIAL MGT IT CON". This abbreviation stood for Mr. Shah's financial management, IT, and consulting activities.

The Shahs reported losses on their Schedules C of $21,566 for 2009 and $32,477 for 2010. The only income that the Shahs reported on Schedule C was $12,000 for 2009 and $9,600 for 2010, the rental income from their Woodward Avenue property. The Shahs reported a total of $28,248 in expenses on Schedule C for 2009 and $33,780 in expenses for 2010 for the following: car and truck, travel, meals and entertainment, advertising, utilities, interest, legal and

**[*7]** professional services, commissions and fees, supplies, taxes and licenses, other, and depreciation and section 179.[2]  The Shahs grouped all of the Schedule C expenses together.

The car and truck expenses that the Shahs deducted related to the development of rental property buildings Mr. Shah owned with his brother and to Mr. Shah's work for Michigan Physicians Group when he drove between clinic locations.  The Shahs reported these expenses on Schedule C because Mr. Shah was not reimbursed for them.  The Shahs presented a report dated October 21, 2013, that summarized the mileage for his Cadillac CTS for two weeks in February 2009.  This report also showed car lease information, service history, and the vehicle's mileage as of January 30, 2009, June 22, 2009, and February 2, 2012; however, this report did not show the mileage for each trip, the times and dates driven, the destinations, or the business purpose of each automobile use for 2009 and 2010.

The Shahs reported business travel expenses of $3,295 for 2009 and $3,735 for 2010 but did not substantiate either the amounts of the expenses or the business purposes of the travel.  Mr. Shah testified that the 2009 travel expenses

---

[2]The Shahs also reported expenses on Forms 8829, Expenses for Business Use of Your Home, for the business use of their home for 2009 and 2010. Respondent allowed deductions for these expenses in the notice of deficiency.

**[*8]** were for a trip Mr. Shah took to Chicago to obtain business advice from his brother, a commercial and residential broker.

The Shahs reported meals and entertainment expenses that related to meals they had with members of their extended family who either worked for Michigan Physicians Group or who were otherwise connected with Mr. Shah's activities. The Shahs did not provide any documents to substantiate either the amounts or the business purpose of these expenses.

Although Mr. Shah testified that the advertising expenses the Shahs reported related to the advertising and Web site development of his various activities, the Shahs did not provide any documents to substantiate these expenses.

Similarly, the Shahs reported other expenses on Schedules C that were further described on the returns as "BOOKS, MAGAZINES, EDUCATION", but they did not provide any documents to substantiate these expenses.

The Shahs did not describe the utility expenses reported on Schedules C, nor did they provide any documents to substantiate them. These amounts presumably related to utilities for the Shahs' personal residence.

The Shahs did not offer any documents to substantiate the interest, legal and professional services, commissions and fees, supplies, or taxes and licenses expenses.

**[*9]**  Additionally, the Shahs did not substantiate their claimed depreciation and section 179 expenses.  Indeed, at trial Mr. Shah was not sure whether these expenses were for the Shahs' Woodward Avenue property or for another property in Troy, Michigan.

### C.  Rental Property

The Shahs rented out their Woodward Avenue property for 2009 and 2010; however, they reported that they placed it into service on June 1, 2010. Consequently, they included a Schedule E, Supplemental Income and Loss, only with their 2010 return.  The Shahs reported rental income of $12,000 for 2009 and $9,600 for 2010 on their Schedules C, and for 2010 they duplicated the $9,600 of income on Schedule E.  The Shahs reported expenses of $18,090 on their 2010 Schedule E for the following items:  advertising, cleaning and maintenance, commissions, legal and other professional fees, mortgage interest, repairs, supplies, taxes, utilities, and depreciation.  These expenses resulted in a Schedule E rental real estate loss of $8,490 for 2010; however, the Shahs did not provide any documents to substantiate these expenses.

### IV.  Family and Business Expenses Reported on K. Dipal's Corporate Returns

K. Dipal reported net losses on its 2009 and 2010 Forms 1120 of $33,702 and $17,716, respectively, despite gross receipts for both years of more than

**[*10]** $158,000. The returns list K. Dipal's business activities as "Computer or IT Related Services" and "Consulting and Management" and list Mr. Shah as the owner of 100% of the voting stock of K. Dipal.

K. Dipal deducted expenses for the following categories of items: taxes and licenses, interest, salaries and wages, repairs and maintenance, advertising, pension and profit sharing, and "other". K. Dipal did not provide any documents to substantiate the taxes and licenses, interest, salaries and wages, repairs and maintenance, advertising, or pension and profit-sharing expenses.

K. Dipal reported "other expenses" of $98,107 for 2009 and $76,291 for 2010. Mr. Shah referred to these expenses as fringe benefits that K. Dipal provided to him and his family members. K. Dipal further itemized these other expenses on its returns into the following categories: training and education, computer services and supplies, gifts, meals and entertainment, legal and professional services, utilities, accounting, auto and truck, bank charges, dues and subscriptions, insurance, laundry and cleaning, outside services and independent contractors, parking fees and tolls, postage, supplies, telephone, and travel. K. Dipal did not provide any documents to support these expenses other than a summary exhibit, but trial testimony further explained these "other expenses".

[*11] As part of the "other expenses", K. Dipal reported training and continuing education expenses for high school tuition payments made to Detroit Country Day School for the Shahs' daughter. The Shahs' daughter helped with filing, computer work, Quicken, data entry, and posting. Mr. Shah called the tuition payments, like many of the other K. Dipal deductions, a fringe benefit for his daughter; however, their daughter was not paid a salary and did not include these tuition payments as income on a personal income tax return. And as previously noted, K. Dipal did not offer any documents to substantiate these expenses.

Other items K. Dipal included in "other expenses" were computer services and supplies expenses. These expenses were for computer equipment at the Shahs' residence, and Mr. Shah used this equipment to remotely support Michigan Physicians Group. K. Dipal did not offer any documents to substantiate these expenses.

Also part of the "other expenses" K. Dipal reported were gift and meal expenses. Because K. Dipal did business with Mr. Shah's family members, it deducted costs for gifts that Mr. Shah gave to his family members and for family meals. Although the Shahs testified that these meals were business meetings where Michigan Physicians Group's IT issues were discussed, K. Dipal did not

[*12] offer any documents to substantiate these expenses or to support the business nature of these meals.

For 2009 K. Dipal reported legal and professional services expenses but did not provide any explanation for them. K. Dipal did not have any contracts for the years in issue with any attorneys or professionals that would account for these expenses, nor did K. Dipal provide any documents to substantiate them. Further, K. Dipal reported utility expenses for cable TV, gas, water, and electricity for the Shahs' personal residence as part of the "other expenses" category. These expenses were for the entire home, not just the 880-square-foot portion that the Shahs had reported as a home office on their personal returns. K. Dipal did not offer any documents to substantiate these expenses.

K. Dipal did not present any evidence to the Court regarding the additional items categorized on its returns as "other expenses": accounting, auto and truck, bank charges, dues and subscriptions, insurance, laundry and cleaning, outside services and independent contractors, parking fees and tolls, postage, supplies, telephone, and travel.

At trial Mr. Shah presented a two-page summary for K. Dipal for the years in issue dated January 16, 2012, that he had produced using Quicken software. Mr. Shah testified that he had imported the bank account information into Quicken

**[\*13]** and then used Quicken to generate this summary. The summary showed totals for K. Dipal's expenses separated by categories. Examples of the items on the Quicken summary were: lawn mowing and landscape, education, medical, household miscellaneous, home repair, retail purchases, travel, meals and entertainment, automobile, IT equipment, IT, utilities, gifts, and payroll service charge expenses. Mr. Shah did not present any of the source documents underlying this summary at trial.

V.  IRS Examination

The IRS audited the Shahs' individual returns and K. Dipal's corporate returns, making adjustments for both 2009 and 2010.

A.  Shahs' Individual Audit

Respondent sent a notice of deficiency on May 2, 2012, to the Shahs for 2009 and 2010 that determined the following deficiencies and penalties:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $6,102 | $1,220 |
| 2010 | 11,665 | 2,333 |

**[\*14]** In the notice respondent disallowed most of the Schedules A, C, and E expense deductions on the Shahs' individual returns, determined accuracy-related penalties, and made other computational adjustments.

    B.    <u>K. Dipal Corporate Audit</u>

Respondent issued K. Dipal a notice of deficiency on May 2, 2012, for 2009 and 2010. In the notice respondent made the following adjustments: increased K. Dipal's income, disallowed many of K. Dipal's deductions, allowed K. Dipal additional deductions for salaries and wages paid during 2010, and determined accuracy-related penalties under section 6662(a). Respondent adjusted K. Dipal's income using a bank deposits analysis that showed additional receipts of $2,000 for 2009 and $4,160 for 2010 on the basis of additional unreported interest and dividends K. Dipal received.[3]

After the notice was issued, Mr. Shah provided respondent with additional documents to support a portion of K. Dipal's claimed deductions disallowed in the notice of deficiency. On the basis of these documents, respondent sent a letter to K. Dipal dated July 24, 2012, allowing K. Dipal additional deductions in the "other expense" category beyond those allowed in the notice of deficiency and

---

[3]In its petition K. Dipal stated that it agreed to respondent's adjustments of $59 for 2009 and $385 for 2010 for dividends received and a $5 adjustment to interest income for 2009.

[*15] reflecting a decrease in K. Dipal's overall deficiency.[4]  In the July 24, 2012,

letter, respondent asserted the following deficiencies and penalties for K. Dipal:[5]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $23,786 | $4,757 |
| 2010 | 26,268 | 5,254 |

## VI.    Tax Court Proceedings

Both the Shahs and K. Dipal timely petitioned.  The Shahs resided in

Michigan and K. Dipal's principal place of business was in Michigan at the time

they petitioned.  The Court consolidated the cases for trial, briefing, and opinion.

At trial K. Dipal made two concessions.  K. Dipal agreed to respondent's

determination that it was entitled to deductions for taxes and licenses expenses of

only $4,178 for 2009 and $3,874 for 2010.  K. Dipal also agreed to respondent's

determination that it was entitled to deductions for interest expenses of only

$1,573 and $1,127 for years 2009 and 2010, respectively.

---

[4]This letter included a revised Form 4549, Income Tax Examination Changes, and a revised Form 886-A, Explanations of Items.  In addition to taking into account the supplemental information, the revised forms corrected errors in how the numbers were presented on the Form 886-A.

[5]The notice of deficiency dated May 2, 2012, issued to K. Dipal determined a deficiency of $26,891 and a section 6662(a) penalty of $5,378 for 2009, and a deficiency of $27,491 and a section 6662(a) penalty of $5,498 for 2010.

**[\*16]** The issues remaining for consideration are whether the Shahs are entitled to Schedule A, C, and E expense deductions that respondent disallowed; whether K. Dipal had additional unreported income; whether K. Dipal is entitled to the business expense deductions that respondent disallowed; and whether the Shahs and K. Dipal are liable for the accuracy-related penalties that respondent determined under section 6662(a).

## OPINION

The Shahs, directly and through K. Dipal, deducted personal expenses and to the extent any of their disallowed expenses may have been deductible, they failed to substantiate them.

## I.    Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[6] The burden may shift to the Commissioner under section 7491(a) if the taxpayer has complied with the necessary substantiation requirements and has maintained all records and cooperated with reasonable requests by the Commissioner regarding information and documents. Neither the Shahs nor K. Dipal has adequately substantiated the expenses in issue. Additionally, neither the Shahs nor K. Dipal

---

[6]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

[*17] asserts that the burden should shift to respondent. As a result, the burden remains on the Shahs and K. Dipal.

In the case of unreported income, before the Commissioner can rely on the presumption of correctness, he must lay a minimal evidentiary foundation linking the taxpayer to the income-producing activity.[7] Once the Commissioner sufficiently connects the taxpayer with the unreported income, then the taxpayer bears the burden of proving that the Commissioner's determination of unreported income is wrong.[8]

Income tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction.[9] Further, the taxpayer is required to maintain sufficient records to "show whether or not such person is liable for tax".[10]

---

[7]E.g., United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990); Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).

[8]DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

[9]INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also Rule 142(a).

[10]Sec. 6001.

[*18] II.     Deductions

The Code allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[11]  Ordinary expenses are those transactions that are of "common or frequent occurrence in the type of business involved."[12]  Necessary expenses are "appropriate and helpful" to the development of the taxpayer's business.[13]

Taxpayers are not allowed deductions for personal, living, or family expenses except where specifically allowed in the Code.[14]  And where deductions are allowable, taxpayers must maintain sufficient records to establish their claimed deductions, retain these records for as long as the contents may become material, and keep these records available for inspection.[15]

Section 274(d) requires strict substantiation of certain expenses.  Such expenses include those relating to travel, meals and entertainment, gifts, and listed

---

[11]Sec. 162(a).

[12]Deputy v. du Pont, 308 U.S. 488, 495 (1940).

[13]Welch v. Helvering, 290 U.S. at 113.

[14]Sec. 262(a).

[15]Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

[*19] property under section 280F(d)(4).[16]  For the years in issue, listed property included passenger automobiles; any other property used as a means of transportation; any property of a type generally used for purposes of entertainment, recreation, or amusement; computers; and cellular telephones.[17]  To comply with the strict substantiation rules, the taxpayer must have adequate records or sufficient evidence corroborating the taxpayer's own statement to substantiate the amount of the expense, the time and the place the expense was paid or incurred, the business purpose of the expense, and the business relationship of the taxpayer to any others benefited by the expense.[18]  To substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure.[19]

---

[16]Sec. 274(d).

[17]Sec. 280F(d)(4) (cellular telephones are not listed property for tax years beginning after December 31, 2009).

[18]Sec. 274(d).

[19]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[*20] Under <u>Cohan v. Commissioner</u>,[20] the Court may approximate the amount of an expense in some instances if the taxpayer can establish a deductible expense but cannot substantiate the precise amount.  However, the taxpayer must provide some basis for that estimate.[21]  In addition, the Court is precluded from making estimates with regard to expenses that are subject to the strict substantiation requirements under section 274(d).[22]

III.    <u>Schedule A Unreimbursed Employee Expenses</u>

We have held that "an individual may be in the trade or business of being an employee and that ordinary and necessary expenses incurred in that trade or business are deductible under section 162."[23]  However, a deduction is not allowed if the employee is entitled to reimbursement from his or her employer but does not

---

[20]39 F.2d 540, 543-544 (2d Cir. 1930).

[21]<u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).

[22]<u>Deely v. Commissioner</u>, 73 T.C. 1081, 1101 (1980); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[23]<u>Kurkjian v. Commissioner</u>, 65 T.C. 862, 869 (1976).

[*21] request reimbursement.[24]  And as previously stated, the employee must substantiate the expense.[25]

The Shahs claimed a deduction for unreimbursed employee expenses for continuing medical education for 2010 on their Schedule A; however, they did not provide any documents to substantiate these expenses.  Further, employees of Michigan Physicians Group were entitled to reimbursement for reasonable business expenses, but there is no evidence that Dr. Shah ever sought reimbursement.  Therefore, because the Shahs did not meet their burden, and because Dr. Shah did not request reimbursement from her employer, the Shahs are not entitled to this deduction.

IV.    Schedule C Activities

The Shahs claimed deductions for losses on Schedules C for 2009 and 2010 relating to financial management, IT, and consulting activities of Mr. Shah, and they are not allowable for two reasons.  First, the Shahs failed to substantiate either that they paid the expenses or the business nature of the expenses.  In

---

[24]Lucas v. Commissioner, 79 T.C. 1, 7 (1982); see also Orvis v. Commissioner, 788 F.2d 1406, 1408 (1986), aff'g T.C. Memo. 1984-533.

[25]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

**[*22]** addition, the claimed expenses are not allowable as deductions because these activities were not engaged in for profit.

A.    Lack of Substantiation

Not only must business expenses be ordinary and necessary, but they also must be substantiated in order to be deductible.  The Shahs failed to substantiate any of the expenses not allowed as deductions by respondent, and many were personal and nondeductible.

The Shahs deducted expenses on Schedules C for:  car and truck, travel, meals and entertainment, business use of home,[26] advertising, utilities, interest, legal and professional services, commissions and fees, supplies, taxes and licenses, other, and depreciation and section 179.  The Shahs grouped all of the Schedule C expenses together for Mr. Shah's financial management, IT, and consulting activities; and with limited exceptions, there was not sufficient evidence to determine which expense related to a corresponding specific business activity.

The car and truck expenses that the Shahs deducted were not strictly substantiated under section 274(d).  To comply with the strict substantiation rules,

---

[26]As previously discussed, respondent allowed deductions for the business use of home expenses for 2009 and 2010 in full.

[*23] the taxpayer must have adequate records or sufficient evidence corroborating the taxpayer's own statement to substantiate the amount of the expense, the time and the place the expense was paid or incurred, the business purpose of the expense, and the business relationship of the taxpayer to any others benefited by the expense.[27] To substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure.[28] The Shahs did not maintain adequate records. The only document they offered to substantiate these expenses was a noncontemporaneous report that summarized two weeks of mileage. This evidence is not sufficient substantiation under section 274(d). Further, the Shahs did not show that these expenses were for business and not personal use. We agree with respondent's disallowance of deductions for these items.

Similarly, the Shahs did not substantiate their travel expenses. At trial Mr. Shah stated that the 2009 travel related to a trip to Chicago; however, the Shahs did not provide any documents to the Court to support these expenses for either

---

[27]Sec. 274(d).

[28]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., supra.

**[\*24]** year, and they offered no testimony about the 2010 travel.  Accordingly, the Shahs failed to meet their burden of proving that they could deduct these items.

Additionally, we find that the Shahs are not entitled to deductions for the meals and entertainment expenses that respondent disallowed.  The Shahs testified that these expenses were for family meals where business was discussed.  These expenses must be strictly substantiated as business expenses, which the Shahs failed to do.  Therefore, the Shahs did not meet their burden of proving that they could deduct these items.

For the advertising, other, interest, and depreciation and section 179 expenses, although there was a limited explanation of what these items related to, the Shahs did not produce any documents such as canceled checks, receipts, credit card statements, or invoices to substantiate these expenses.  Further, there is insufficient information in the record for us to estimate under Cohan,[29] and thus the Shahs did not meet their burden of proving that they could deduct these expenses.

---

[29]See Lerch v. Commissioner, 877 F.2d 624, 628-629 (7th Cir. 1989) (finding no duty to estimate under Cohan if taxpayers have no documents to support their deductions and documents "could easily have been produced"), aff'g T.C. Memo. 1987-295.

[*25] Finally, the Shahs did not provide any evidence substantiating the utilities, legal and professional services, commissions and fees, supplies, and taxes and licenses expenses that they reported. Consequently, they failed to meet their burden of proving that they could deduct these items.

B. Section 183 For-Profit Requirement

Under section 183(a), in general, taxpayers may deduct only expenses associated with activities that they engaged in for profit. Taxpayers bear the burden of establishing that their "endeavor was entered into or conducted with the intention of making a profit."[30] Profit is defined as "economic profit, independent of tax savings."[31]

The regulations under section 183 provide nine factors that we use to determine whether an activity is engaged in for profit.[32] The nine factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or the taxpayer's advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on

---

[30]Benz v. Commissioner, 63 T.C. 375, 382 (1974).

[31]Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986).

[32]Sec. 1.183-2(b), Income Tax Regs.

[*26] other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation.[33]  These nine factors are not an exclusive list, and no one factor is determinative.[34]  The Court gives "more weight * * * to objective facts than to the taxpayer's mere statement of intent" when it decides whether the taxpayer intends to make a profit.[35]

Our analysis of the for-profit requirement could begin and end with this single fact:  According to Mr. Shah's own testimony, he neither sought nor received compensation for any of his Schedule C activities.  There was no intent to make money; rather, his intent for most of these activities was to provide services to family members and to deduct family expenses.  We nonetheless look to the specific factors.

### 1.    Manner in Which Activity Is Conducted

Under this first factor we focus on whether the taxpayer operated the activity in a businesslike manner.  The Court looks at "whether * * * [the

---

[33]Sec. 1.183-2(b), Income Tax Regs.

[34]Sec. 1.183-2(b), Income Tax Regs.

[35]Keanini v. Commissioner, 94 T.C. 41, 46 (1990).

**[*27]** taxpayer] maintained complete and accurate books and records, whether the activity was conducted in a manner substantially similar to other comparable businesses which are profitable, and whether changes were attempted in order to improve profitability."[36] Our finding that the taxpayer did conduct the activity in a businesslike manner supports an assertion that the activity was engaged in for profit.

Here, we find that Mr. Shah did not operate his Schedule C activities in a businesslike manner. Although Mr. Shah's testimony that he used Quicken software to keep track of his expenses reflects some basic business formality, the Shahs did not substantiate any expenses beyond Mr. Shah's compiled summary. Mr. Shah testified that he had created a Web site and a business model to attract new clients, but after at least 10 years of activity, his only clients were family members and Michigan Physicians Group. Further, his neither seeking nor receiving compensation for his services from family members is not consistent with operating in a businesslike manner. Therefore, this factor weighs against finding that Mr. Shah intended to make a profit from his Schedule C activities.

---

[36]Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979).

**[\*28]** The Shahs reference <u>Lewenhaupt v. Commissioner</u>[37] when they write in their answering brief: "[A]ll those business activities have been considerable, regular and continuous, with business plans for all the products / services listed on my web sites [sic]." <u>Lewenhaupt</u> held that the scope of the activities must be "considerable, continuous, and regular" for the Court to conclude that the taxpayer was engaged in a trade or business.[38] <u>Lewenhaupt</u> does not help the Shahs because they offered insufficient proof that Mr. Shah's Schedule C activities were considerable, continuous, and regular, such that we would conclude he was engaged in a trade or business. Despite the fact that Mr. Shah was engaged in the activities for many years, no evidence establishes that his Schedule C activities were for profit.

---

[37]20 T.C. 151 (1953), <u>aff'd</u>, 221 F.2d 227 (9th Cir. 1955).

[38]<u>Lewenhaupt v. Commissioner</u>, 20 T.C. at 163.

**[\*29]**       2.       Expertise

A taxpayer's studying accepted business, economic, and scientific practices in the particular field indicates a profit motive.[39]  The taxpayer's consulting other people who are experts in the area points to profit intent as well.[40]

Mr. Shah had varying expertise in his Schedule C activities.  Mr. Shah had expertise in the IT and computer consulting field because of his advanced degree in computer science which complemented his management, database design, data analysis, and system design activities.  The feedback Mr. Shah received from the doctors at Michigan Physicians Group about what computer software worked best for patient data entry and recordkeeping also added to his expertise.  However, Mr. Shah had no expertise in financial management or investment consulting.  He was not licensed, nor was there any evidence in the record that he had spent extensive time studying financial markets, investing, or real estate.  On balance, we find that this factor does not support a finding that his Schedule C activities were for profit.

       3.       Time and Effort

Under this factor, the Court looks to see how much time the taxpayer devotes to the activity and whether it has "substantial personal or recreational

---

[39]Sec. 1.183-2(b)(2), Income Tax Regs.

[40]Sec. 1.183-2(b)(2), Income Tax Regs.

**[\*30]** aspects".[41]   Other relevant inquiries are whether the taxpayer withdraws from another activity to devote more time to the activity in question.[42]   Finally, if the taxpayer employs other qualified people to do the work, then the fact that the taxpayer does not personally devote substantial amounts of time to the activity does not weigh against our finding a profit motive.[43]

The Shahs did not present sufficient evidence to show that Mr. Shah's time and effort support finding that his Schedule C activities were for profit. Specifically, there is nothing in the record that allows us to determine how much time Mr. Shah spent working in his individual capacity for the IT activities he reported on his Schedule C.  Further, it is unclear from the record how much time and effort he spent on financial management and consulting.  Because of the lack of evidence, this factor fails to support a conclusion that his Schedule C activities were for profit.

### 4.    Expectation of Asset Appreciation

A taxpayer's reasonable expectation that the assets used to further the activity will appreciate over time can show a profit-making intent despite no

---

[41]Sec. 1.183-2(b)(3), Income Tax Regs.

[42]Sec. 1.183-2(b)(3), Income Tax Regs.

[43]Sec. 1.183-2(b)(3), Income Tax Regs.

**[*31]** current year profits.[44]  However, appreciation projections "based on an assumption that would have been used by only the most incorrigible optimist" point to the lack of a profit motive.[45]

There is not sufficient evidence on the record to determine what assets Mr. Shah had that specifically related to his Schedule C activities, nor is there sufficient evidence to determine whether Mr. Shah expected these assets to appreciate over time.  Accordingly, we cannot conclude that this factor supports a finding of a for-profit motive.

### 5. Success in Other Activities

If the taxpayer has previously turned a similar activity around and made it profitable, then this is another indicator that the taxpayer's current activity is for profit even if it is currently generating losses.[46]

Mr. Shah was not successful in other activities.  Mr. Shah's Schedule C IT activities were similar to K. Dipal's activities, which generated losses.  Further, he was not successful in other activities similar to his Schedule C endeavors because

---

[44]Sec. 1.183-2(b)(4), Income Tax Regs.

[45]Rodriguez v. Commissioner, T.C. Memo. 2013-221, at *44 (citing Swigert v. Commissioner, T.C. Memo. 1982-500, and Wittstruck v. Commissioner, T.C. Memo. 1980-62, aff'd, 645 F.2d 618 (8th Cir. 1981)).

[46]Sec. 1.183-2(b)(5), Income Tax Regs.

[*32] they all had generated losses as well. Therefore, we conclude that this factor weighs against finding that he was engaged in the Schedule C activities for profit.

### 6. History of Income or Losses

The regulations provide that "[a] series of years in which net income was realized would of course be strong evidence that the activity is engaged in for profit."[47] Similarly, a series of years of net losses would show that the taxpayer was not engaged in the activity for profit.[48] However, if losses are due to unforeseen circumstances or are within a startup period where losses are customarily necessary to generate future profitability, this is not a factor that weighs against finding a for-profit intent.[49]

Mr. Shah testified that he had been performing these Schedule C activities for at least 10 years and has never been paid for them. Indeed, he never sought or received compensation for them. Therefore, because these activities have a history

---

[47]Sec. 1.183-2(b)(6), Income Tax Regs.

[48]See Wittstruck v. Commissioner, T.C. Memo. 1980-62 ("Continued retention of the * * * [activity] after any reasonable hope of profit has clearly been ruled out makes it very difficult for us to find a good faith expectation of profit.").

[49]Sec. 1.183-2(b)(6), Income Tax Regs.; Engdahl v. Commissioner, 72 T.C. at 669.

[*33] of generating losses, this factor weighs against finding that Mr. Shah intended to earn a profit.

### 7. Amount of Occasional Profits

Under this factor we compare the amount of profits earned over time in relation to the amount of losses, investment, and value of the assets.[50] If a taxpayer's activity generates large losses over a long period, with only an occasional small profit, this shows that the activity was not engaged in for profit.[51] If a taxpayer's only profits are a "minimal amount", then "this profit bears little weight in establishing a primary profit motive."[52] However, substantial occasional profits with only small losses over time show that the taxpayer intended to make a profit.[53]

As previously stated, for at least 10 years Mr. Shah's Schedule C activities have not generated any revenue because he neither sought nor received compensation for these services. Thus, because there is not a record of any

---

[50]Sec. 1.183-2(b)(7), Income Tax Regs.

[51]Sec. 1.183-2(b)(7), Income Tax Regs.

[52]Akey v. Commissioner, T.C. Memo. 2014-211, at *17.

[53]Sec. 1.183-2(b)(7), Income Tax Regs.

[*34] occasional profits from these listed Schedule C activities, we find that this factor weighs against determining that he engaged in these activities for profit.

The Shahs mention Sabelis v. Commissioner[54] in their answering brief presumably to show that Mr. Shah's Schedule C activities were for profit. The Shahs did not include any analysis in their brief; however, they may have made reference to Sabelis for its proposition that a taxpayer's activities can still be for profit despite not generating net income if there was profit potential. Sabelis does not help the Shahs. The financial management, IT, and consulting activities were done as unpaid favors for family members. Mr. Shah testified that he had been engaged in those activities for more than 10 years and that he neither sought nor earned compensation. Accordingly, these facts do not show that his Schedule C activities had profit potential.

### 8. Financial Situation

If the "taxpayer does not have substantial income or capital from sources other than an activity [this] may indicate that the activity is engaged in for profit."[55] Conversely, our finding that the taxpayer has other substantial sources

---

[54]37 T.C. 1058 (1962).

[55]Giles v. Commissioner, T.C. Memo. 2005-28, slip op. at 47.

**[*35]** of income could weigh against our finding a for-profit activity.[56]  This is particularly true if we find that this activity's losses provide substantial tax benefits to the taxpayer or if there are personal or recreational aspects to the activity.[57]

We find that the eighth factor weighs against Mr. Shah as well.  Dr. Shah earned income as a physician that the Shahs used to support their family expenses.  Her wages were a substantial source of income for their family whereas Mr. Shah's Schedule C activities generated losses that offset Dr. Shah's income.  Thus, this factor weighs against finding that these activities were for profit.

### 9.    Personal Pleasure or Recreation

The regulations provide that "a profit motiv[e] may be indicated where an activity lacks any appeal other than profit," but an "exclusive intention of deriving a profit" is not required.[58]

We cannot conclude that these activities lack any appeal other than profit, nor can we conclude from the record that Mr. Shah's intent was to derive a profit.

---

[56]Golanty v. Commissioner, 72 T.C. 411, 428-429 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(8), Income Tax Regs.

[57]Sec. 1.183-2(b)(8), Income Tax Regs.

[58]Sec. 1.183-2(b)(9), Income Tax Regs.

[*36] Although these activities are not typically the kind of activities that would reasonably be said to be predominantly for personal pleasure or recreation, there is insufficient evidence to make a conclusive determination. Therefore, we cannot conclude that this factor supports a finding of a for-profit intent.

Overall, we conclude that Mr. Shah's Schedule C activities were not for profit because they do not satisfy the for-profit requirements under section 1.183-2(b), Income Tax Regs. Unless otherwise allowable, any expenses associated with these activities would be deductible only to the extent of gross income generated from those activities. Because these activities did not generate income and the expenses are not otherwise allowable, section 183 bars deductions for the related expenses.[59]

Although it appears that a portion of the expenses associated with the IT activity may have been related to K. Dipal, neither the Shahs, K. Dipal, nor respondent argued for reallocating any expenses from the Shahs' Schedule C to K. Dipal. Accordingly, we do not reach this issue. And even if they had argued reallocation was appropriate, because of insufficient evidence we are not able to identify which of the Schedule C expenses are attributable to the IT activities. The

---

[59]See sec. 183(b).

[*37] Shahs' returns do not separate the expenses on Schedule C between Mr. Shah's IT, financial management, and consulting activities.

V.    Rental Property

For the years in issue the Shahs' Woodward Avenue property generated rental income, and respondent disallowed portions of the Shahs' reported rental expense deductions. Respondent showed that the $12,000 of income reported on Schedule C for 2009 was rental income from the Woodward Avenue property and argued that the income and expenses associated with the Shahs' Woodward Avenue property should have been reported on Schedule E. For 2010 respondent eliminated $9,600 of rental income from Schedule C because it was reported on both Schedules C and E. During both years respondent disallowed deductions for many of the expenses that Mr. Shah reported but allowed deductions for repairs, taxes, depreciation, and insurance expenses in its notice of deficiency.

Section 469 prevents taxpayers from reducing nonpassive income by losses attributable to passive activities.[60] Rental activities are generally considered to be passive activities under section 469(c)(2).

---

[60]Hillman v. Commissioner, 118 T.C. 323, 329 (2002); Langille v. Commissioner, T.C. Memo. 2010-49, aff'd, 447 Fed. Appx. 130 (11th Cir. 2011).

[*38] "There are two principal exceptions to the general rule that rental real estate activities are per se passive activities."[61] The first exception is for taxpayers who qualify as real estate professionals,[62] and the other exception applies if a person actively participates in the activity during the year.[63]

The Shahs leased their Woodward Avenue property for income. This is a passive activity unless they show that they are either real estate professionals or actively participating. They did not present any evidence that they meet either criterion. Because the rental of the Woodward Avenue property is unrelated to the Schedule C activities, it is not appropriate to aggregate the rental activity on Schedules C as the Shahs did. Although they argued in their petition that their rental activities for the Woodward Avenue property did not begin until 2010, Mr. Shah testified at trial that the $12,000 in income for 2009 on Schedule C was from the Woodward Avenue property. Consequently, the rental income and expenses attributable to the Woodward Avenue property belong on Schedules E.[64] Further,

---

[61]Moss v. Commissioner, 135 T.C. 365, 368 (2010).

[62]Sec. 469(c)(7).

[63]Sec. 469(i)(1).

[64]See 2009 Instructions for Schedule E (Form 1040), E-1; 2010 Instructions for Schedule E (Form 1040), E-1.

**[\*39]** because the Shahs have not presented any documents to substantiate the expenses they claimed for this property, we sustain respondent's determination disallowing deductions for most of these expenses.

VI.    Unreported Income for K. Dipal

Where a taxpayer fails to keep sufficient records under section 6001, the Commissioner may compute taxable income through a method that clearly reflects income.  The Commissioner's use of the bank deposits analysis method has long been approved in such an instance.[65]  This method "assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge."[66]  Nontaxable sources include funds attributable to "'loans, gifts, inheritances, or assets on hand at the beginning of the taxable period.'"[67]

_____

[65]Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

[66]Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (citing DiLeo v. Commissioner, 96 T.C. at 868).

[67]Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72).

**[*40]** A bank deposits analysis may provide prima facie evidence of income, and the Commissioner is not required to prove the likely source of the income.[68] The taxpayer bears the burden of establishing that items should be excluded from income or allowed as deductions.[69] One way of proving that an item should have been excluded would be to show that the deposit is derived from a nontaxable source.[70]

Respondent determined $2,000 of unreported income for 2009 and $4,160 for 2010 for K. Dipal on the basis of his bank deposits analysis. In its petition K. Dipal disagreed with these additions, claiming these amounts were nontaxable reimbursements for Web site development, but it did not provide any evidence at trial to substantiate this claim. As a result, K. Dipal did not meet its burden of proving that these amounts should not have been included in its taxable income.

VII. K. Dipal's Expenses

K. Dipal claimed deductions for the following expenses: taxes and licenses, interest, salaries and wages, repairs and maintenance, advertising, pension and profit sharing, and other expenses. These "other expenses" were further itemized

---

[68]Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

[69]Gemma v. Commissioner, 46 T.C. 821, 833 (1966).

[70]See Nicholas v. Commissioner, 70 T.C. at 1064.

**[\*41]** into the following categories: training and education, legal and professional services, utilities, accounting, auto and truck, bank charges, dues and subscriptions, insurance, laundry and cleaning, outside services and independent contractors, parking fees and tolls, postage, supplies, telephone, and travel.

Both parties made concessions relating to K. Dipal's claimed deductions. At trial K. Dipal agreed to respondent's determinations of taxes and licenses expense deductions of only $4,178 for 2009 and $3,874 for 2010 and interest expense deductions of only $1,573 for 2009 and $1,127 for 2010. Respondent in his letter to K. Dipal dated July 24, 2012, allowed additional deductions beyond what K. Dipal claimed for salaries and wages.

K. Dipal did not produce any documents to substantiate the repairs and maintenance, advertising, or pension and profit-sharing expenses that it deducted.[71] Although Mr. Shah presented a yearend brokerage statement from 2011 that purported to substantiate the pension and profit-sharing expense, it was not admitted as evidence at trial because it did not shed light on when contributions were made. Further, the brokerage statements K. Dipal attached to

---

[71]K. Dipal deducted $9,000 for pension and profit-sharing contributions for 2010.

[*42] its petition are not part of the record before us. Accordingly, we sustain respondent's disallowance of deductions for these expenses.

Of the "other expenses" deductions claimed, K. Dipal provided a Quicken summary that purported to show all of its cashflows for the years in issue, and Mr. Shah testified about these expenses. Many of the expenses K. Dipal reported were personal to the Shahs and not deductible because the expenses are not typical expenses for an IT business and do not satisfy the "ordinary and necessary" requirement of section 162. Specifically, the lawn mowing expenses were for lawn care at the Shahs' personal residence. The education expenses were for their daughter's private high school tuition. The medical expenses were for vitamins, doctors' bills, and prescriptions for Mr. Shah. The miscellaneous household and home repair expenses in 2010 were for the Shahs' entire home and not just for the 880 square feet respondent allowed as a home office. K. Dipal provided no evidence connecting these expenses with the home office. The retail purchases were for Mr. Shah's professional attire and clothing for his family. The utilities expenses related to their personal residence. The gifts were given to his family members.

Most of the amounts and categories listed on this Quicken summary provided at trial did not match the amounts and categories that K. Dipal reported

[*43] on its Forms 1120 when it itemized the "other expenses". Further, K. Dipal did not provide any documents, such as receipts, credit card statements, bank account statements, or canceled checks, to substantiate these expenses on the Quicken summary.

Respondent allowed $12,862 of the $98,107 in "other expenses" deductions K. Dipal claimed for 2009 and $8,411 of the $76,291 in "other expenses" deductions for 2010 on the basis of documents K. Dipal provided during the audit. Other than uncorroborated testimony and the Quicken summary, K. Dipal did not substantiate these expenses. K. Dipal argues in its answering brief that because Mr. Shah used Quicken software to keep track of K. Dipal's expenses and because Mr. Shah never entered an expense into Quicken without supporting bank information, it has sufficiently substantiated these expenses. We do not agree. The Quicken summary was not contemporaneous and not supported by source documents and the amounts did not match most of the amounts and categories itemized on K. Dipal's returns. Further, most of the expenses appear to be personal. Accordingly, we do not allow any additional deductions beyond those that respondent allowed in his July 24, 2012, letter.

**[\*44]** VIII.  Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax.  Respondent bears the burden of production as to the Shahs' penalties.[72]  The penalties will not apply to any portion of the underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[73]

As defined in the Code, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."[74]  Negligence has been further defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"[75]  Additionally,

---

[72]See sec. 7491(c).  We note that respondent does not bear the burden of production as to penalties of K. Dipal (a corporation) because section 7491(c) refers only to an "individual".  NT, Inc. v. Commissioner, 126 T.C. 191, 195 (2006).

[73]Sec. 6664(c)(1).

[74]Sec. 6662(c).

[75]See Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v.

(continued...)

**[*45]** a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[76]

An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[77] However, if the taxpayer has substantial authority for the tax treatment of an item, then the portion of the tax attributable to that item is not included in the understatement.[78] A taxpayer has substantial authority only if the weight of authority supporting the tax treatment of the item outweighs the contrary authority.[79]

After taking into account the parties' concessions, the Shahs' 2010 understatement and K. Dipal's understatements for both 2009 and 2010 exceed

---

[75](...continued)
Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964)); sec. 1.6662-3(b)(1)(ii), Income Tax Regs. ("Negligence is strongly indicated where * * * [a] taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances[.]").

[76]Higbee v. Commissioner, 116 T.C. 438, 449 (2001); sec. 1.6662-3(b)(1), Income Tax Regs.

[77]Sec. 6662(d)(1)(A).

[78]Sec. 1.6662-4(d)(1), Income Tax Regs.

[79]Sec. 1.6662-4(d)(3)(i), Income Tax Regs.

**[*46]** 10% of the tax required to be shown on the respective returns and are greater than $5,000. Accordingly, the substantial understatement penalties under section 6662(b)(2) apply.

Respondent has not met his burden of production for applying the substantial understatement penalty against the Shahs for 2009 because there is not a substantial understatement of income tax for this year. The Shahs reported a total tax of $57,198. We agree with respondent's determination that the amount of tax required to be shown on the Shahs' return is $63,300. Thus, the Shahs understated their tax by $6,102, which is less than 10% of the tax required to be shown on the return. Accordingly, respondent has not shown that there is a substantial understatement of income tax for 2009.

However, respondent has shown that the Shahs and K. Dipal acted with negligence. Neither the Shahs nor K. Dipal introduced sufficient records to substantiate the expenses they reported. The Shahs and K. Dipal lacked a reasonable basis for deducting those expenses because they were personal, including things like lawn care and private school tuition expenses.

Further, because they lacked a reasonable basis for deducting these expenses, it follows that they lacked substantial authority for these claimed

**[*47]** deductions. Thus, the Shahs and K. Dipal did not meet the substantial authority standard for overcoming the substantial understatement penalty.

The Shahs and K. Dipal argued that the section 6662(a) penalties should not apply because Mr. Shah's using tax preparation software to generate the returns shows that they acted with reasonable cause and in good faith under section 6664(c)(1). Tax preparation software users must enter accurate information for the software to prepare correct returns. Mr. Shah entered personal items into the tax preparation software as business expenses. Therefore, he caused the software to generate erroneous returns.[80] Accordingly, we find that neither the Shahs nor K. Dipal satisfies the reasonable cause and good-faith defense of section 6664(c).

IX. Conclusion

The Shahs and K. Dipal deducted many personal expenses for 2009 and 2010 as business expenses. K. Dipal also omitted some income. Because most of the deducted expenses were personal, without substantiation, or a combination of both, we sustain respondent's determinations in the notice of deficiency as to the Shahs and in the notice of deficiency as revised by the letter dated July 24, 2012, for K. Dipal. Further, we hold that both the Shahs and K. Dipal are liable for the accuracy-related penalties under section 6662(a) for 2009 and 2010.

---

[80]In the IT profession, this is known by the acronym "GIGO".

**[\*48]** We have considered the parties' arguments and, to the extent not addressed here, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Appropriate decisions will be entered for respondent</u>.